Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5128 | **DATE** | 9/18/2001 |
| **CASE TITLE** | GEORGIA-PACIFIC CORP vs. WALSH CONSTRUCTION CO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant Walsh Construction's motion for summary judgment on Count V and XI is granted. Counts V and XI of the corrected fourth amended complaint are dismissed in their entirety with prejudice. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 19 2001 | |
| | Notified counsel by telephone. | | date docketed | 323 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/18/2001 | |
| JS | courtroom deputy's initials | 01 SEP 19 AM 8:20 | date mailed notice JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGIA-PACIFIC CORPORATION, )
)
    Plaintiff, )
)
v. ) No. 99 C 5128
)
WALSH CONSTRUCTION COMPANY OF )
ILLINOIS, an Illinois Corporation, et al., )
)
    Defendants. )

**DOCKETED**
**SEP 1 9 2001**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 29, 2001, plaintiff Georgia-Pacific Corporation ("Georgia-Pacific") filed an eleven-count, Corrected Fourth-Amended Complaint against defendants Walsh Construction Company of Illinois, Inc., ("Walsh"), McClier Corp., ("McClier"), Rossco, Inc., ("Rossco"), Rowley Construction Company, ("Rowley"), International Crown Construction Company ("Crown"), and Varco-Pruden Building, Inc., ("Varco-Pruden"). On August 1, 2001, Walsh filed this motion for summary judgment on Counts V and XI of the Corrected Fourth-Amended Complaint pursuant to Federal Rules of Civil Procedure 56. Count V alleges a claim of common-law fraud against Walsh, and Count XI alleges a claim against Walsh under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10. Having considered the matter fully, Walsh's motion for summary judgement as to Count V and XI of the Corrected Fourth-Amended Complaint is GRANTED. Counts V and XI of the Corrected Fourth-Amended Complaint are dismissed in their entirety with prejudice.

1

# STATEMENT OF FACTS[1]

Georgia-Pacific and Walsh entered into two written agreements in which Walsh agreed to provide general contracting services for the construction of a main warehouse and additional structures in University Park, Illinois. Walsh, in turn, sub-contracted with defendant Rossco. Rossco was to provide the pre-engineered building, the labor, equipment, materials and expertise to erect the main warehouse and additional structures. Rossco, in turn, sub-contracted the erection of the pre-engineered main warehouse to defendant Crown. Upon the execution of the agreements, Walsh represented to Georgia-Pacific that Walsh possessed the requisite skill and judgment to accomplish the agreed upon work in accordance with the contract terms.

During construction, Walsh prepared a series of pay applications seeking payment from plaintiff for work performed. The details contained in each of these applications were taken from sub-contractors' invoices submitted to Walsh seeking payment for their work completed. Along with the pay applications, Walsh submitted activity logs to plaintiff. The activity logs reported which sub-contractors were on the job each day and what type of work was being done. Walsh's project manger, Ken Chura ("Chura") or his assistant Mary Ellen Martin ("Martin") complied the activity logs sent with the pay applications.

Before the final pay applications were sent to Georgia-Pacific, Walsh prepared rough drafts of the pay applications, and Chura then met with plaintiff's representative and on-site project manager to go over the rough draft line by line. If the plaintiff's on-site project manager had any disagreements with the information contained in the pay application, the document was changed

---

[1] The following facts are undisputed and are taken from the Walsh's and plaintiff's respective Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits.

to meet plaintiff's concerns.

After the plaintiff's on-site representative and project manager approved the rough draft of the pay application, it was sent to Georgia-Pacific's architect, Ray Rarick of McClier, in Atlanta. Rarick regularly came to Chicago to review and inspect the project, and to discuss the details of the pay application with Chura. Additionally, William Consolie of the plaintiff's Engineering and Technology department also traveled monthly to Chicago to review the progress of the project and to examine the pay applications. Georgia-Pacific sent Consolie specifically to ensure that Walsh met its contractual obligations.

After Rarick, Consolie and Hanks approved the rough draft of the pay application, Walsh put the pay application into its final form, which was then signed by Walsh's Chief Financial Officer, Larry Kibbon ("Kibbon") and forwarded to Georgia-Pacific for payment. Kibbon was never on the job site and had no personal knowledge of the facts contained in the pay applications. Kibbon attested to its correctness based on Chura's representations, but each pay application signed by Kibbon stated that the work completed within that application was completed in accordance with the contract documents.

Throughout the construction of the warehouse and facility, Georgia-Pacific did not bring any workmanship issues or construction variances to Chura's attention, and in December, 1996, Georgia-Pacific took possession of warehouse and facilities. Soon after Georgia-Pacific took possession of the warehouse, Georgia-Pacific notified Chura that the warehouse roof leaked. Chura contacted Rossco to direct Crown to return to the site and address the problem. On August 12, 1997, Chura sent a letter to Georgia-Pacific providing a status report on various open issues existing at that time including the leaky roof. Chura stated in material part, "the concerns brought

3

up by Mr. Kim McCubbin [plaintiff's warehouse superintendent] by letter, dated June 8, 1997, have been corrected and/or addressed. The roof leaks have been repaired." The next day, August 13, 1997, Chura sent another letter to Georgia-Pacific stating in material part:

> The contractor acknowledges that there have been roof leaks. Our subcontractor has been constantly on site monitoring and repairing the leaks as they have been identified. For the past three (3) months our subcontractor has visited the site when it rains and has made the necessary repairs. As discussed in our August 12, 1997 telephone conversation, the warehouse leaks have been repaired and we are working on a few small leaks in the Main Office area.

The roof continued to leak after Chura's letters. Georgia-Pacific filed suit on August 6, 1999.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the

4

nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (hearsay testimony may not be considered in summary judgment proceeding).

## ANALYSIS

I.   Choice of Law

In diversity jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the choice of law rules set forth in the Restatement (Second) of Conflicts of Law which Illinois has adopted. Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970); Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir.1996). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the torts at issue. Id. In this case, it is undisputed that the state with the most significant relationship to the torts at issue is Illinois. Therefore, this court will apply the substantive law of Illinois to this case[2].

---

[2] In addition, since neither party raised a conflict of law issue in this diversity suit, the governing law in any case is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

5

II.     Common Law Fraud

In Illinois, to assert a claim of fraud, Georgia-Pacific must establish by clear and convincing evidence: (1) that Walsh made a representation of a material fact, not a promise or opinion, to Georgia-Pacific; (2) that Walsh's material representation was false; (3) that Walsh knew or believed that the material representation was false; (4) that Georgia-Pacific reasonably relied on the truth of Walsh's false representation to its detriment; (5) that Walsh made the false and material representations for the purpose of causing Georgia-Pacific to affirmatively act. Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1347 (7th Cir. 1983).

Georgia-Pacific alleges in Count V that Walsh, in its June, July, August, September, November, December, 1996 and January, 1997 pay applications, "maliciously, deliberately and willfully" stated that work completed in each application was completed in accordance with the contract documents. Georgia-Pacific alleges that these statement are false because "various pieces of structural X-bracing were improperly affixed to the top chord of the bar joists instead of to adjacent girders," and further alleges that it relied on these "misrepresentations of material fact" to its detriment. (Corr. Fourth Am. Compl. ¶¶ 83, 85, 87).

It is undisputed in this case that Walsh through its Chief Financial Officer, Kibbon made material representations to Georgia-Pacific with each pay application submitted to Georgia-Pacific that the work outlined in each pay application was completed by Walsh and its sub-contractors in accordance with contract terms. It is also undisputed in this case that the material representations made by Walsh to Georgia-Pacific were false, as the work completed by Walsh and its sub-contractors was not completed in accordance with contract terms. Upon a complete review of the record, however, viewing all the evidence in a light most favorable to Georgia-Pacific, this court

6

finds that there is insufficient evidence in the record to create a dispute of material fact such that a reasonable finder-of-fact could find by clear and convincing evidence: (1) that Walsh made any material representation to Georgia-Pacific with knowledge or belief that the representation was false; (2) that Georgia-Pacific reasonably relied on the truth of any material representations made by Walsh; (3) that Walsh made any false representation, through Chura's correspondence to Georgia-Pacific in 1997; (4) that Chura's correspondence to Georgia-Pacific in 1997 was a representation intended to cause Georgia-Pacific to act; (5) that Georgia-Pacific relied on Chura's correspondence in 1997 to its detriment. Accordingly, this court must grant Walsh's motion for summary judgment as to Count V of the Corrected Fourth-Amended Complaint as a matter of law.

A. Pay Applications: Knowledge or Belief of Falsity

Knowledge or belief of a false statement can be proven by direct or circumstantial evidence. Mother Earth, Ltd. v. Strawberry Camel, Ltd., 72 Ill.App.3d 37, 50 390 N.E.2d 393, 404 (1st Dist. 1979). Circumstantial evidence must be such to justify an inference of knowledge or belief and such inferences are particularly appropriate where the matter in question is peculiarly within the range of facts known to the defendant. 72 Ill.App.3d at 50, 390 N.E.2d at 405. Moreover, representations made in reckless disregard or culpable ignorance of their truth or falsity, also support an action for fraud. Duhl v. Nash Realty Inc., 102 Ill.App.3d 483, 491-2, 429 N.E.2d 1267, 1274 (1st Dist. 1981).

Georgia-Pacific has failed to carry its evidentiary burden on the issue of knowledge or belief because there is no evidence in the record, direct or circumstantial, which creates a triable issue of material fact that Walsh knew or believed that work was not completed in accordance with contract terms. Georgia-Pacific argues that Chura, should have verified that work covered by each pay application was completed in accordance with contract specifications, that neither Chura nor Martin

7

undertook any actions to determine whether the work performed by Walsh's sub-contractors in any given pay period accorded with the contract documents and that Walsh failed to insist that sub-contractors conduct a quality assessment for work completed.

It is undisputed that each pay application contained a certification stating that "The undersigned contractor [Walsh] certifies that the work covered by this application for payment has been completed in accordance with the contract documents," that Kibbon signed each pay application certifying that work was done in accordance with contract documents and that Chura was in charge of ensuring that work was done in accordance with contract documents. There is not a scintilla of evidence demonstrating, however, that Walsh, Kibbon, or Chura knew or believed that work was not completed according to contract documents when Walsh submitted each pay application. Furthermore, Georgia-Pacific, in opposition to this motion for summary judgment, admits that Kibbon relied on Chura's representations in order to satisfy himself that work described in any given pay application conformed to contract documents and further admits that Chura and Martin relied on the sub-contractors assessments in verifying whether work was completed in accordance to contract terms. These admissions establish the neither Kibbon, Chura, or Martin knew or believed that work was not completed in accordance with contract terms. Accordingly, upon review of the record, there is no evidence which establishes that Walsh, Kibbon, Martin, or Chura knew or believed that work being done by Walsh and various sub-contractors was not done according to contract specifications.

Georgia-Pacific also argues, however, that Kibbon's reliance on Chura assessments of the quality of work completed and Chura's and Martin's failure to verify to quality of work completed constitutes "reckless" conduct. (Pl.'s Am. Mem. in Opposition at 7-9). Georgia-Pacific concludes

that Walsh's "reckless disregard" for the truth satisfies the knowledge or belief element of common law fraud in Illinois. Georgia-Pacific cites Duhl v. Nash Realty Inc., 102 Ill.App.3d 483, 491-2, 429 N.E.2d 1267, 1274 (1st Dist. 1981) in support of this proposition. In Duhl, the Illinois Appellate Court stated in dicta that statements made in culpable ignorance of their truth or falsity are fraudulent and that where statements are made in culpable ignorance it is immaterial whether a party misrepresenting a material fact knows the facts to be false. 102 Ill.App.3d at 491, 429 N.E.2d at 1274 (citations omitted). The Appellate Court held that plaintiff's contention in the complaint that defendants acted intentionally and with reckless disregard of the truth was sufficient to withstand a motion to dismiss for failure to state a claim. Id.

On a motion for summary judgment, however, a party who bears burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986); Warsco v. Preferred Technical Group, 258 F.3d 557, 563 (7th Cir. 2001). Accordingly, the Duhl case and its holding is immaterial to this motion for summary judgment. Upon a complete review of the evidence in this case, Georgia-Pacific has simply rested on its pleadings that Walsh acted in reckless disregard and Georgia-Pacific has failed to affirmatively demonstrate a genuine issue of material fact that Walsh act with reckless disregard or culpable ignorance.

B.  Pay Applications: Reliance

In determining whether the injured party reasonably relied on a false statement, courts look to all the relevant circumstances surrounding the alleged misrepresentation. Chicago Export Packing Co. v. Teledyne Industries, Inc., 207 Ill.App.3d 659, 663, 566 N.E.2d 326, 329 (1st Dist. 1990). A

9

person may justifiably rely on facts only where parties do not have equal knowledge or means of obtaining knowledge of facts allegedly misrepresented. Id. A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another. Id. (citations omitted).

Walsh argues that Geogia-Pacific's own on-going daily inspection of the premises and pre-approval of each and every pay applications defeats Georgia-Pacific's claim that it reasonably relied on Walsh's certification on the pay application because Georgia-Pacific had an equal opportunity to know every detail of the construction as it progressed. Walsh argues that since Georgia-Pacific's project managers and architects were on the job site daily and had the opportunity to watch every piece of iron being welded and every screw being turned, Georgia-Pacific through the use of ordinary prudence, either knew or could have known of each alleged deviation from the contract specifications as they occurred. Walsh concludes that Georgia-Pacific should not have be allowed to contend that it relied on Kibbon's general representation that the work was being done pursuant to the contract documents since the same information was available to both Georgia-Pacific and Walsh.

In response, Georgia-Pacific argues that the contracts at issue in this case unambiguously state that Georgia-Pacific relied on Walsh's "skill and judgment" in performing the work in accordance with the contract documents. Additionally, Georgia-Pacific argues that Walsh represented itself to Georgia-Pacific as having the expertise to perform the work of erecting the pre-engineered metal buildings and that no Georgia-Pacific representative actually signing off on the pay application, Consolie, Ronald Hanks or Beverly Hanks, had an engineering degree. Georgia-Pacific rests on the blanket proposition that reasonable reliance is generally a question of fact for the jury

10

to decide. Duhl, 102 Ill. App. 3d at 491, 429 N.E.2d at 1274.

In this case, the following is undisputed: During the period of construction, Walsh submitted monthly summary packets to Georgia-Pacific containing, daily activity logs and pay applications. Chura met with Georgia-Pacific's on-site project manager to review preliminary pay applications line by line. Georgia-Pacific's on-site representatives toured the field daily, reviewed pay applications, found them to be accurate and signed off on them. Walsh forwarded each preliminary pay application to Georgia-Pacific's architect, Ray Rarick ("Rarick") of McClier, in Atlanta and McClier, approved and signed-off on the pay applications. Upon a complete review of the undisputed evidence, it is clear that there were several deviations from contract specifications in the work completed by Walsh and its sub-contractor, but no one noticed these deviations during construction, not Georgia-Pacific, not Walsh. Additionally, the undisputed evidence in this case reveals, that although Walsh was under contractual obligations to Georgia-Pacific, Georgia-Pacific had equal access and opportunity to Walsh to observe every minute detail of the work being completed. Accordingly, Georgia-Pacific has failed to carry its evidentiary burden of reasonable reliance. In viewing all the evidence in light most favorable to plaintiff, there is no evidence that Georgia-Pacific reasonably relied on any material representation by Walsh since Georgia-Pacific had equal knowledge or means of obtaining knowledge of the true facts which Georgia-Pacific contends were misrepresented.

C. Chura's Correspondence

Georgia-Pacific argues that since after Chura's letters of August 12th and August 13th the warehouse roof continued to leak, Chura falsely represented to Georgia-Pacific that roof leaks had been repaired. (Corr. Fourth Am. Compl. ¶183). Georgia-Pacific also alleges that it relied on this

11

false representation "by allowing Walsh and its sub-contractors to make numerous and repeated attempts to fix or repair non-conforming, defective, and faulty work rather than to replace the roof." (Corr. Fourth Am. Compl. ¶¶ 188, 198). Georgia-Pacific argues that because of this reliance the roof is now irreparably damaged and must be replaced. (Corr. Fourth Am. Compl. ¶¶ 191, 201).

The undisputed evidence in this case reveals that Chura requested Rossco to summon Crown to the warehouse to address Georgia-Pacific's concerns about its leaking roof and Crown, after observing the leaks during several rain episodes, made repairs to the roof. Accordingly, Chura's statements to Georgia-Pacific were not false because the roof was repaired. Additionally, since Georgia-Pacific has neither alleged nor adduced evidence in the record which demonstrates that Chura represented to Georgia-Pacific that the roof would never leak again, this court finds that Chura gave a true and accurate statement as to repairs completed by the sub-contractors.

Furthermore, there is no evidence in the record which demonstrates that Georgia-Pacific relied on Chura's statements to their detriment, or that Chura made his statements to Georgia-Pacific in an attempt to induce Georgia-Pacific to action. There is no evidence in the record that Chura solicited or somehow persuaded Georgia-Pacific to act, and there is no evidence that the roof is now irreparable because of Georgia-Pacific's reliance on Chura's statements. The undisputed evidence reveals that the roof was either improperly installed or defective in its entirety, and that Georgia-Pacific had already purchased the warehouse with the defective roof at the time of Chura's statements. Therefore, Georgia-Pacific did not rely to their detriment on Chura's statements nor were Chura's statements made to induce action by Georgia-Pacific.

III. <u>Illinois Consumer Fraud Act</u>

In response to this motion for summary judgment, Georgia-Pacific withdrew its claim against Walsh under the Illinois Consumer Fraud Act. <u>See</u> (Pl. Am. Mem in Opposition at 14). Notwithstanding this withdrawal, Georgia-Pacific's claim under the Illinois Consumer Fraud Act must fail as a matter of law because Georgia-Pacific has failed to allege or adduce evidence in the record that establishes any consumer nexus between Walsh's alleged fraudulent activities and consumer protection concerns. Since there are no allegations of any nexus between the complained-of conduct and consumer protection concerns, <u>see</u> (Corr. Fourth Am. Compl. ¶¶325-328), and no evidence in the record of any nexus, summary judgment in favor of Walsh must be granted as to Count XI of the Corrected Fourth-Amended Complaint as a matter of law. <u>See</u> <u>Athey Products Corp. v. Harris Bank Roselle</u>, 89 F.3d 430, 437 (7th Cir. 1996).

## CONCLUSION

For all the above stated reasons, Walsh's motion for summary judgment is GRANTED. Counts V and XI of the Corrected Fourth-Amended Complaint are dismissed in their entirety with prejudice. All previously set dates remain.

ENTER:

*/s/ James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: September 18, 2001