Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5128 | **DATE** | 9/24/2001 |
| **CASE TITLE** | GEORGIA-PACIFIC CORP vs. WALSH CONSTRUCTION CO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, United Dominion's motion for summary judgment is granted. Count VIII of the corrected fourth amended complaint is dismissed in its entirety with prejudice. All previously set dates shall stand.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 5 2001 | |
| | Notified counsel by telephone. | | date docketed | 327 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 01 SEP 25 AM 7:55 | 9/21/2001 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | | JS6 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGIA-PACIFIC CORPORATION, )
)
    Plaintiff, )
)
v. ) No. 99 C 5128
)
WALSH CONSTRUCTION COMPANY OF )
ILLINOIS, an Illinois Corporation, et al., )
)
    Defendants. )

DOCKETED
SEP 25 2001

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 29, 2001, plaintiff Georgia-Pacific Corporation ("Georgia-Pacific") filed an eleven-count, Corrected Fourth-Amended Complaint against defendants Walsh Construction Company of Illinois, Inc., ("Walsh"), McClier Corp., ("McClier"), Rossco, Inc., ("Rossco"), International Crown Construction Company ("Crown"), and United Dominion, Inc., Varco Pruden Buildings Division, ("United Dominion"). On August 1, 2001, United Dominion filed this motion for summary judgment on Count VIII of the Corrected Fourth-Amended Complaint pursuant to Federal Rules of Civil Procedure 56. Count VIII alleges a claim of common-law fraud against United Dominion. Having considered the matter fully, United Dominion's motion for summary judgement as to Count VIII of the Corrected Fourth-Amended Complaint is GRANTED. Count VIII of the Corrected Fourth-Amended Complaint is dismissed in its entirety with prejudice.

1

327

# STATEMENT OF FACTS[1]

Georgia-Pacific and Walsh entered into two written agreements in which Walsh agreed to provide general contracting services for the construction of a main warehouse and additional structures in University Park, Illinois. Walsh, in turn, sub-contracted with defendant Rossco. Rossco was to provide the pre-engineered building, the labor, equipment, materials and expertise to erect the main warehouse and additional structures. Rossco, in turn, sub-contracted the erection of the pre-engineered main warehouse to defendant Crown. Rossco bought the roofing materials for the warehouse from defendant United Dominion. United Dominion was not involved in the erection of the buildings.

United Dominion manufactures, among other things, standing seam roofs ("SSR"), which are comprised of individual metal panels that are 24 inches wide. The individual metal roof panels are seamed together at the sides to form the standing seam portion of the roof. The panels are mechanically joined by a seaming tool that crimps the sides of the roof panels together to form a seam with the required width of 5/16 of an inch. The seam is considered standing because the roof panels bend upward at their sides to elevate the seam approximately three-inches above the base of the roof panel.

In December 1996, Georgia-Pacific took possession of the warehouse and facilities, and soon after Georgia-Pacific notified Walsh that the warehouse roof leaked. Walsh contacted Rossco and at the request of Rossco, United Dominion sent field technician Jim Runaas ("Runaas") to the warehouse on January 22 and 23, 1997, to "try and determine the cause of the severe leaking that was taking place in the main warehouse of this facility." (United Dominion's L.R. 56.1(a) St. Facts, ¶21). Runaas summarized his opinions in a

---

[1] The following facts are undisputed and are taken from the United Dominion's and Georgia-Pacific's respective Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits.

January 24, 1997, letter addressed to a representative at Rossco. Runaas' letter was ultimately forwarded onto Georgia-Pacific.

In his letter, Runaas explained that there were "areas of slush that were higher than the seams of the SSR roof panel." Runaas determined that the roof had not been installed properly because the finished seam was not properly tightened to the required dimension and Runaas recommended to Rossco that the roof of the main warehouse building be repaired by re-seaming the standing seams of the roof panels. Runaas concluded his letter by stating "Tommy [the Rossco representative], once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years." Georgia-Pacific allowed the roof to be re-seamed, but the roof continued to leak. Georgia-Pacific filed suit on August 6, 1999.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. It is not the function of this court to scour the

3

record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

ANALYSIS

I. Choice of Law

In diversity jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the choice of law rules set forth in the Restatement (Second) of Conflicts of Law which Illinois has adopted. Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970); Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir.1996). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the tort at issue. Id. In this case, it is undisputed that the state with the most significant relationship to the torts at issue is Illinois. Therefore, this court will apply the substantive law of Illinois to this case[2].

II. Common Law Fraud

In Illinois, to assert a claim of fraud, Georgia-Pacific must establish by clear and convincing evidence: (1) that United Dominion made a representation of a material fact, not a promise or opinion, to Georgia-Pacific; (2) that United Dominion's material representation was false; (3) that United Dominion knew or believed that the material representation was false; (4) that Georgia-Pacific reasonably relied on the truth of United Dominion's false representation to its detriment; and (5) that United Dominion made the false and material representation for the purpose of causing Georgia-Pacific to affirmatively act. Chicago College of

---

[2]In addition, since neither party raised a conflict of law issue in this diversity suit, the governing law in any case is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

4

Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1347 (7th Cir. 1983).

Georgia-Pacific's entire fraud claim against United Dominion is based on Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years." Georgia-Pacific alleges that this statement is false because the roof continued to leak after the roof was re-seamed. Georgia-Pacific also alleges that Runaas and United Dominion knew the statement was false, and that Runaas made the statement in order to induce Georgia-Pacific to repair the roof, to draw Georgia-Pacific's attention away from the improper design of the roof, and to convince Georgia-Pacific not to file this lawsuit. (Corr. Fourth Am. Compl. ¶¶288-89, 294). Georgia-Pacific concludes that because of its reasonable reliance on Runaas' statement the roof now is irreparably damaged and Georgia-Pacific's business has suffered losses. (Corr. Fourth Am. Compl. ¶299).

Upon a complete review of the record, viewing all the evidence in a light most favorable to Georgia-Pacific, this court finds that there is insufficient evidence in the record to create a dispute of material fact such that a reasonable finder-of-fact could find by clear and convincing evidence: (1) that Runaas' made any misrepresentations of material facts; (2) that Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years," is a representation of a fact and not an opinion or prediction; (3) that Runaas made any material representation to Georgia-Pacific with knowledge or belief that the representation was false; (4) that Runaas made any material representation to induce Georgia-Pacific to act; (5) that Georgia-Pacific relied on Runaas' statements to its detriment. Accordingly, this court must grant United Dominion's motion for summary judgment as to Count VIII of the Corrected Fourth-Amended Complaint as a matter of law.

  A.  Prima Facie Case of Fraud: Misrepresentation of A Material Fact

Georgia-Pacific argues that Runaas' statement "once the roof is re-seamed to the proper

5

tolerance, it should continue to perform as intended for many years," is a misrepresentation of a material fact. The rule in Illinois is that predictions about the future are opinions and not actionable under a theory of fraud. Lidecker v. Kendall College, 194 Ill. App. 3d 309, 316, 550 N.E.2d 1121, 1125 (1st Dist. 1990). Illinois courts have held that "[a] representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact." Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 295 Ill.App.3d 567, 571, 692 N.E.2d 812, 816 (1st Dist. 1998)(citations omitted). The United States Court of Appeals for the Seventh Circuit also has explained the difference between non-actionable opinions and actionable misrepresentations of material fact:

> To establish fraud under Illinois law, the defendants must prove a misrepresentation of fact [citations omitted]...A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law.

Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir.1993)(citations omitted).

Upon review of the evidence in the record, this court finds Runaas' initial determination, that the finished seams of the SSR panels had not been properly tightened to the required tolerance, concerned present facts and is actionable as fraud if found to be incorrect. As to Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years," the undisputed evidence in this case demonstrates this statement is merely an expression of opinion relating to a future event, contingent on future action and therefore not actionable as fraud under any circumstances.

In response, Georgia-Pacific argues first that Man Roland Inc. v. Quantum Color Corp., 57 F. Supp.2d 576 (N.D.Ill. 1999)(Alesia, J.) supports the conclusion that all of Runaas' statements, in his January letter, are actionable as fraud because all of Runaas' statements were representations of fact

6

concerning the capabilities of the warehouse roof then in existence.

In Roland, Judge Alesia found that statements made regarding the capabilities of a press, including that the press "produced and could produce commercially acceptable two color processed work in a commercially acceptable manner" and "was operating and could operate in accordance with its designed specifications" were an opinion concerning the capabilities of a machine already in existence, and therefore actionable as fraud. 57 F. Supp.2d at 584.

In this case, similar to Roland, the roof investigated by Runaas did exist at the time Runaas made his statements. Unlike Roland, however, Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years," does not concern the capabilities of the roof as it existed when Runaas made his statement. Instead, Runaas' statement concerned the capabilities of the roof in the future, after the roof is re-seamed to the proper tolerance. Accordingly, this court finds that Runaas's statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years," is merely Runaas' opinion predicting how the roof will perform in the future; (1) if the roof is repaired; (2) if the roof is repaired by re-seaming; and (3) if the roof is re-seamed to a proper tolerance. It is undisputed that the roof had not been re-seamed to the proper tolerance when Runaas gave his opinion to Rossco, therefore it is clear that Runaas' opinion about the future capabilities of a roof, contingent on the nature and quality of future repairs of a roof, are not actionable as fraud under any circumstances.

Second, Georgia-Pacific argues that since Runaas' statement was specific, quantifiable and verifiable and since Runaas' statement was not couched as being merely his opinion, then his statement must be considered one of fact. This argument is without merit because in looking at the wording of Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform

7

as intended for many years," it is clear that Runaas' articulated how the roof <u>should</u> respond to repairs, <u>if</u> repairs are done to the roof and <u>if</u> the repairs done to the roof are of a specific nature and quality. (Emphasis added). Whether Runaas' statement is specific, quantifiable and verifiable is of no consequence because the wording of Runaas' statement is unambiguous and because Geogia-Pacific offers no alternative argument how the word "should" or how the phraseology "once the roof is re-seamed to the proper tolerance" could be interpreted as anything other than contingent statements of future events. Accordingly, this court finds that Runaas' opinion, on its face, was couched in conditional and contingent terms, and therefore constitute an opinion.

Finally, Georgia-Pacific argues that since Runaas held himself out to be an expert on the installation and repair of standing seam roofs then his opinion should be treated as a statement of fact. <u>West v. Western Cas. and Sur. Co.</u>, 846 F.2d 387, 393-94 (7th Cir. 1988). In <u>West</u>, the Seventh Circuit opined that a statement which appears to be a statement of opinion standing alone may nevertheless be a statement of fact when considered in context. <u>See id</u>. at 393. The Seventh Circuit held that a defendant's statements concerning a plaintiff's legal rights were material misrepresentations of fact because defendant held himself out as an expert in the area of workers' compensation and had a statutory duty to be honest and forthright with the plaintiff. <u>Id</u>. at 394.

Georgia-Pacific's conclusion that Runaas held himself out to be an expert on the installation and repair of standing seam roofs is without merit and the holding of <u>West</u> is inapplicable to this case. There is absolutely no evidence in the record demonstrating that Runaas held himself out to be an expert to Georgia-Pacific at any point in time. Additionally, there is no evidence in the record establishing that when Runaas made his statements concerning the roof to Rossco he was holding himself out to be an expert to Georgia-Pacific. The undisputed facts of this case reveal, that in January 1997, Rossco, not

8

Georgia-Pacific, requested that United Dominion send Runaas out to the warehouse and it is undisputed that Runaas initially reported his findings back to Rossco, not to Georgia-Pacific. Furthermore, there is no evidence in the record to establish that Runaas owed any contractual or common-law duty to Georgia-Pacific. Also there is no evidence in the record that Runaas was dishonest or not forthwith in his determination, recommendation, and opinion.

In summary, it has not been alleged that Runaas' initial determination, regarding the finished seams of the SSR panels not having been properly tightened to the required tolerance, is false. Additionally, there is no evidence in the record to establish a genuine issue of material fact that Runaas' initial determination was false. Moreover, the subject-matter of Runaas' opinion, the wording of his opinion, the context and the circumstances of his opinion, and the intended audience of Runaas' opinion all conclusively demonstrate that Runaas' statement "once the roof is re-seamed to the proper tolerance, it should continue to perform as intended for many years," is nothing more than a prediction and not actionable as fraud. Georgia-Pacific has failed to present sufficient evidence in the record to create a genuine issue of material fact that Runaas' provided Georgia-Pacific with any misrepresentations of fact.

B.  Prima Facie Case of Fraud: Knowledge or Belief of Falsehood

Georgia-Pacific also has failed to carry its evidentiary burden on the element of knowledge or belief because there is no evidence in the record, direct or circumstantial, which creates a genuine issue of material fact that United Dominion or Runaas' knew or believed that the roof would not perform as intended for many years to come if the roof was re-seamed to a proper tolerance.

Upon a complete review of the evidence in this case, Georgia-Pacific has simply rested on its pleadings and has failed to affirmatively demonstrate a genuine issue of material fact that United Dominion or Runaas knew or believed Runaas' determinations, recommendations, or predictions in

9

Runaas' letter were false or that Runaas' acted with reckless disregard or culpable ignorance is making his determination, representation and prediction.

C. <u>Prima Facie Case of Fraud: United Dominion's Intent to Induce Georgia-Pacific</u>

Georgia-Pacific has also failed to adduce evidence in the record to raise an issue of material fact that United Dominion intended to induce Georgia-Pacific to act on its alleged false statement. Again, it is undisputed that Rossco requested that United Dominion send Runaas out to the warehouse and that Runaas initially reported his findings back to Rossco. Additionally, it is undisputed that United Dominion had no contract with Georgia-Pacific and that United Dominion was not involved in erection of the buildings. In light of this undisputed evidence, there is insufficient evidence in the record to create a genuine issue of material fact that United Dominion had any interest in whether Georgia-Pacific fixed the roof or replaced the roof of the warehouse. In response to this undisputed evidence, Georgia-Pacific presents no evidence in the record of Runaas' or United Dominion's vested interest or intent to induce. Instead, Georgia-Pacific rests on its allegations that Runaas' statement to Rossco was intended to induce Georgia-Pacific to repair the roof, shift the focus away from alleged design defects of the roof, and stop the filing of this suit. (Corr. Fourth Am. Compl. ¶294). These allegations are completely without substantiation in the record and are insufficient to defeat this motion for summary judgment.

D. <u>Prima Facie Case of Fraud: Georgia-Pacific Detrimental Reliance</u>

Georgia-Pacific has failed to adduce evidence in the record to raise an issue of material fact that Georgia-Pacific relied to their detriment on Runaas' statements. Reserving judgment on the issue of there Georgia-Pacific reasonably relied on Runaas' statement, there is simply no evidence in the record to establish that Georgia-Pacific suffered any detriment as a result of its reliance on Runaas' letter.

It is a fundamental element of a fraud action that the victim of an alleged fraud show that he relied on

10

the misrepresentations to his detriment, a victim of an alleged fraud must show that he was defrauded of something. Stromberger v. 3M, 990 F.2d 974, 976-77 (7th Cir. 1993). Georgia-Pacific argues that Runaas' letter defrauded Georgia-Pacific of time. Georgia-Pacific explains that had Runaas' not made his statements, Georgia-Pacific would not have been "lulled into believing that the Facility's roof could be repaired." (Pl. Mem. in Opposition at 14). The inference being that had it not been for Runaas' statement, Georgia-Pacific would have replaced its roof immediately and been back in business sooner.

Georgia-Pacific's arguments, however, are without substantiation in the record because Georgia-Pacific has failed to allege and failed to adduce evidence in the record quantifying in hours how long it allowed repairs to the roof to continue in reliance on the Runaas' letter and quantifying in dollars how much the delay in replacing the roof cost. The allegations of the Corrected Fourth-Amended Complaint do not properly and specifically allege Georgia-Pacific's damages in reliance on Runaas' statements and the record in this case does not create an issue of material fact that Georgia-Pacific relied on Runaas' letter to its detriment.

## CONCLUSION

For all the above stated reasons, United Dominion's motion for summary judgment is GRANTED. Counts VIII of the Corrected Fourth-Amended Complaint is dismissed in its entirety with prejudice. The parties are again urged to discuss settlement. All previously set dates remain.

ENTER:

/s/ James F. Holderman
JAMES F. HOLDERMAN
United States District Judge

DATE: September 24, 2001

11